AO 108 (Rev. 06/09) Application for a Warrant to Seize Property Subject to Forfeiture

# UNITED STATES DISTRICT COURT
for the
District of New Mexico

FILED
United States District Court
Albuquerque, New Mexico

Mitchell R. Elfers
Clerk of Court

| | |
|---|---|
| In the Matter of the Seizure of<br>*(Briefly describe the property to be seized)*<br><br>2021 Chevrolet Corvette Stingray bearing Vehicle Identification Number: 1G1YC2D49M5101963 | )<br>)<br>)   Case No.   **23mr2268**<br>)<br>) |

**APPLICATION FOR A WARRANT
TO SEIZE PROPERTY SUBJECT TO FORFEITURE**

I, a federal law enforcement officer or attorney for the government, request a seizure warrant and state under penalty of perjury that I have reason to believe that the following property in the _____ District of __New Mexico__ is subject to forfeiture to the United States of America under __21__ U.S.C. § __881(a)(6)__ *(describe the property)*:
2021 Chevrolet Corvette Stingray bearing Vehicle Identification Number: 1G1YC2D49M5101963 (the "SUBJECT PROPERTY").

The application is based on these facts:
See attached affidavit, reviewed and approved by AUSA Taylor Hartstein on December 6, 2023.

☑ Continued on the attached sheet.

*Applicant's signature*

Special Agent Emmett Fritz, DEA
*Printed name and title*

Attested to by the applicant in accordance with Fed. R. Crim P. 4.1
by being telephonically sworn and electronically signed.

Date: __December 7, 2023__

*Judge's signature*

City and state: __Albuquerque, New Mexico__    Hon. Laura Fashing, U.S. Magistrate Judge
*Printed name and title*

# AFFIDAVIT IN SUPPORT OF APPLICATION FOR SEIZURE WARRANT

## INTRODUCTION

I, Emmett Fritz, Special Agent of the United States Drug Enforcement Administration ("DEA"), being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1. I am a Special Agent with the DEA and have been since January 2019. As such, I am a "federal law enforcement officer" within the meaning of Federal Rule of Criminal Procedure 41(a)(2)(C), that is, a government agent engaged in enforcing the criminal laws and duly authorized by the Attorney General to request arrest and search warrants. Furthermore, I am a law enforcement officer of the United States within the meaning of 18 U.S.C. § 2510(7), and I am empowered by law to conduct investigations and to make arrests for criminal offenses, to include those enumerated in 18 U.S.C. § 2516. I am further authorized to make seizures of property as specified by 21 U.S.C. § 878(a)(4).

2. Prior to becoming a Special Agent, I was a police officer with the Albuquerque Police Department ("APD") for approximately 3 years, where I served in the Field Services Bureau division. I graduated from the DEA Training Academy in Quantico, Virginia, after receiving approximately 16 weeks of specialized narcotics-related training. While at the DEA Training Academy, I became familiar with how controlled substances are consumed, manufactured, packaged, marketed, and distributed. I also am familiar with firearms and how they are used by drug traffickers and other criminals.

3. My experience as a Special Agent includes, but is not limited to, investigating violations of the federal drug and firearm laws, including the possession and use of firearms as

tools of the drug trade. I have also spoken with other law enforcement officers with expertise and experience in these areas.

4. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended merely to show that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

## PROPERTY TO BE SEIZED

5. I make this Affidavit in support of an application for the issuance of a Seizure Warrant for: **a 2021 Chevrolet Corvette Stingray bearing Vehicle Identification Number: 1G1YC2D49M5101963 (the "SUBJECT PROPERTY").**

## BACKGROUND

6. Based upon the facts detailed in this Affidavit, probable cause exists to believe that Jose ROMERO, the purchaser and beneficial owner of the SUBJECT PROPERTY, is a fentanyl trafficker with no or minimal legitimate income. There is also probable cause to believe that the purchase of the SUBJECT PROPERTY was made using drug proceeds and that the SUBJECT PROPERTY is therefore subject to forfeiture under 21 U.S.C. §§ 853(a)(1) and 881(a)(6) as well as 18 U.S.C. §§ 981(a)(1)(A) and 982(a)(1).

7. In this affidavit, when I assert that a statement was made, I have either direct knowledge of the statement, or the information was provided by another law enforcement agent, and I have either spoken to the Law Enforcement Officer or I have read and reviewed the Officer's report.

8.      Since this Affidavit is being submitted for the limited purpose of securing a Seizure Warrant, I have not included each and every fact known to me concerning this investigation. I have set forth only the facts that I believe are necessary to establish probable cause.

## **RELEVANT CRIMINAL STATUTES AND FORFEITURE AUTHORITY**

9.      Title 21 United States Code § 841(a) provides that "[e]xcept as authorized by this subchapter, it shall be unlawful for any person knowingly or intentionally—(1) to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance; (2) to create, distribute, or dispense, or possess with intent to distribute or dispense, a counterfeit substance." 21 U.S.C. § 841(a). Subsection (b) sets designates the penalties corresponding to various controlled substances in various amounts. These controlled substances include fentanyl. 21 U.S.C. § 841(b).

10.     Title 21 United States Code § 846 provides that "[a]ny person who attempts or conspires to commit any offense defined in this subchapter shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the attempt or conspiracy." 21 U.S.C. § 846.

11.     Title 18 United States Code § 1956(a)(1)(B)(i) provides, in relevant part, the following:

> Whoever, knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity, conducts or attempts to conduct such a financial transaction which in fact involves the proceeds of specified unlawful activity . . . knowing that the transaction is designed in whole or in part to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity . . . shall be sentenced to a fine of not more than $500,000 or twice the value of the property involved in the transaction, whichever is greater, or imprisonment for not more than twenty years, or both.

18 U.S.C. § 1956(a)(1)(B)(i).

12. Title 18 United States Code § 1956(c)(7)(A) defines "specified unlawful activity" to include "any act or activity constituting an offense listed in section 1961(1) of this title . . .". Title 18 United States Code § 1961(1)(D) includes "any offense involving . . . the felonious manufacture, importation, receiving, concealment, buying, selling, or otherwise dealing in a controlled substance or listed chemical (as defined in section 102 of the Controlled Substances Act), punishable under any law of the United States." This includes 21 U.S.C. §§ 841 and 846.

13. Title 21 United States Code § 853(a) provides, in relevant part, the following:

> Any person convicted of a violation of this subchapter or subchapter II punishable by imprisonment for more than one year shall forfeit to the United States, irrespective of any provision of State law—(1) any property constituting, or derived from, any proceeds the person obtained, directly or indirectly, as the result of such violation; (2) any of the person's property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, such violation.

21 U.S.C. § 853(a).

14. Title 21 United States Code § 853(f) provides that "[t]he Government may request the issuance of a warrant authorizing the seizure of property subject to forfeiture under this section in the same manner as provided for a search warrant. If the court determines that there is probable cause to believe that the property to be seized would, in the event of conviction, be subject to forfeiture and that an order under subsection (e) may not be sufficient to assure the availability of the property for forfeiture, the court shall issue a warrant authorizing the seizure of such property."[1] 21 U.S.C. § 853(f).

---

[1] 21 U.S.C. § 853(e) provides for protective orders to restrain certain property or enjoin its use/alienation. This provision also provides for the execution of a performance bond or other

15. Title 21 United States Code § 881(a)(6) provides that "[t]he following shall be subject to forfeiture to the United States and no property right shall exist in them: . . . (6) All moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance or listed chemical in violation of this subchapter, all proceeds traceable to such an exchange, and all moneys, negotiable instruments, and securities used or intended to be used to facilitate any violation of this subchapter." 21 U.S.C. § 881(a)(6).

16. Title 18 United States Code § 981(a)(1) provides that "[t]he following property is subject to forfeiture to the United States: (A) Any property, real or personal, involved in a transaction or intended transaction in violation of section 1956, 1957, or 1960 of this title, or any property traceable to such property."

17. Title 18 United States Code § 982(a)(1) provides that "[t]he court, in imposing sentence on a person convicted of an offense in violation of section 1956, 1957, or 1960 of this title, shall order that the person forfeit to the United States any property, real or personal, involved in such offense, or any property traceable to such property."

18. Title 21 United States Code § 881(b) provides that "[a]ny property subject to forfeiture to the United States under this section may be seized by the Attorney General in the manner set forth in section 981(b) of Title 18." 21 U.S.C. § 881(b).

---

action to preserve the availability of property for forfeiture. As described in more detail below, however, there is reason to believe that these measures would be insufficient to preserve the availability of the SUBJECT PROPERTY for forfeiture in the present situation.

19. Title 21 United States Code § 881(e) provides for the disposition of property civilly or criminally forfeited pursuant to federal narcotics statutes.

20. Title 18 United States Code § 982(b)(1) provides that "[t]he forfeiture of property under this section, including any seizure and disposition of the property and any related judicial or administrative proceeding, shall be governed by the provisions of section 413 (other than subsection (d) of that section) of the Comprehensive Drug Abuse Prevention and Control Act of 1970 (21 U.S.C. 853)."

21. Title 18 United States Code § 981(b)—which is referred to by 21 U.S.C. § 881(b) (above)—governs civil seizure and forfeiture of property by the Attorney General and other designated individuals.

22. Title 18 United States Code § 981(b)(2) provides, in relevant part, that "[s]eizures pursuant to this section shall be made pursuant to a warrant obtained in the same manner as provided for a search warrant under the Federal Rules of Criminal Procedure." 18 U.S.C. § 981(b)(2).

## FACTS AND CIRCUMSTANCES

23. Since 2019, DEA has been investigating members of a local Albuquerque gang identified as the "Get Hard Crew" (GHC), for drug trafficking and other violent crimes. Several of the members of this gang have been arrested and others continue to carry about criminal acts in furtherance of the gang. One member of the gang was identified as Jose ROMERO with the alias of "Risk." ROMERO was identified by DEA as a significant fentanyl trafficker for the GHC gang in 2021. In 2021, DEA Agents conducted several surveillance operations on other GHC members during which ROMERO would be present. ROMERO was observed by Agents conducting hand-

to-hand drug transactions during these surveillance operations. Lastly, ROMERO, prior to his below-described arrest in September 2023, had a felony warrant for possession of a controlled substance for some time. In all, Agents with the DEA attempted several more surveillance operations targeting ROMERO but were unable to corroborate a confidential source to gain entry into the organization or to keep track of ROMERO's whereabouts as he moved around the city of Albuquerque frequently.

24.     In late September 2023, APD contacted DEA Agents about ROMERO. APD informed DEA Agents that ROMERO was wanted as a suspect in a homicide that occurred on September 6, 2023. APD Detectives explained that this homicide appeared to begin as a gang feud between current GHC members, including ROMERO, and former GHC members. The altercation that led to the homicide occurred inside of Isotopes Stadium between ROMERO, another GHC member identified as Nathen Garley, and Isaiah Vasquez, a former GHC member.

25.     At this time, Detectives explained the events leading up to the homicide to DEA Agents. Detectives stated that there is surveillance footage of ROMERO and others GHC members following Isaiah Vasquez away from the stadium prior to the homicide. According to anonymous tips and witness statements, it was determined that ROMERO and the other GHC gang members observed Isaiah Vasquez enter a white Dodge pickup truck and depart the area of Isotopes baseball park. It was at this time ROMERO and other GHC gang members, including Nathen Garley, entered a dark colored Dodge Durango and began to follow a white Dodge truck that pulled out and left a parking lot near the Isotopes baseball park. According to witness statements, at this time, ROMERO, who was the driver of the Dodge Durango, and other GHC members conducted a drive-by shooting aimed at the white Dodge truck they followed from the area of the Isotopes baseball

<400>

park. The shooting occurred near the address of 1155 Avenida Cesar Chavez, Albuquerque, New Mexico. Once the shooting was over, there is surveillance footage of the dark colored Dodge Durango fleeing the scene.

26. When Officers arrived on scene to the shooting, they encountered one deceased individual and another person who was gravely injured. Neither of these individuals were identified as Isaiah Vasquez, who was the intended target for this drive-by shooting for the ongoing gang feud. It was determined that Isaiah Vasquez got into a truck similar to the truck that was shot at by ROMERO and the GHC members, but ROMERO and the GHC Members targeted the incorrect vehicle. Based on this information, state felony warrants for ROMERO and Nathan Garley's arrest were issued.

27. With several anonymous tips and information that APD obtained, ROMERO was identified as a shooter and the owner of the dark colored Dodge Durango. Furthermore, several anonymous tips informed APD that ROMERO owned a car business identified as "Conture_Customs." With that information, Detectives were able to identify a phone number belonging to ROMERO and were able to locate him in order to execute the arrest warrant.

28. When he was arrested on the outstanding warrant(s), ROMERO was encountered in the SUBJECT PROPERTY and was in possession of a firearm, approximately 16 fentanyl pills, and a large sum of United States Currency. Based on my training and experience, I know that drug traffickers often possess firearms to protect themselves and their assets from rival gang and drug trafficking organization. Furthermore, carrying large sums of United States Currency is common amongst drug traffickers because they often conduct hand-to-hand drug transactions with various individuals and the sale of narcotics is often a cash business.

29. ROMERO is currently in custody on the pending state charges. The SUBJECT PROPERTY was towed and impounded by law enforcement officers at the time of ROMERO's arrest and remains in law enforcement custody. Although I believe the SUBJECT PROPERTY is being lawfully held as evidence in the state case, I am seeking a seizure warrant to establish legal authority for the DEA and the U.S. Marshals Service to maintain custody of the SUBJECT PROPERTY pending forfeiture proceedings.

30. DEA Agents also have spoken with federal agents from Homeland Security Investigations ("HSI") about ROMERO and Nathen Garley. According to HSI Agents, on September 13, 2023, Nathen Garley, a purported member of GHC and the person APD identified as a shooter during the September 6th drive-by shooting, was arrested following a traffic stop of a Dodge sedan in which he was a passenger. The car was stopped on Interstate 40 in Cibola County, New Mexico and searched in a probable cause search. During that search, a duffle bag with more than 10 kilograms of fentanyl pills was found in the trunk of the car. HSI's investigation determined that Garley traveled to Phoenix, Arizona to pick up the fentanyl pills and was returning to Albuquerque to distribute them.

31. Garley was charged via criminal complaint with Possession with Intent to Distribute 400 Grams and More of Fentanyl in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A) in Case No. 23-mj-1410-SCY. A preliminary hearing was held on September 18, 2023, and Magistrate Judge Yarbrough found that probable cause existed to believe that Garley committed the charged offense.

32. As part of their investigation, HSI Agents secured a search warrant for the phone Garley was carrying at the time of his arrest. According to the investigating agents, a preliminary

9

search of the phone showed that Garley began using it on approximately September 7, 2023, after the above-described shooting, and the phone contained a photograph showing that ROMERO was in Phoenix, Arizona with Garley after the shooting and in the days leading up to September 13th traffic stop, though he was not in the car with Garley at the time of the traffic stop.

33. On September 26th, 2023, I gathered information from the New Mexico Department of Workforce Solutions on ROMERO's work history and income over the last three years. According to these documents, in the first quarter of 2020, ROMERO worked at Walmart and had the gross wage of $34.50. Later in the first quarter of 2020, ROMERO worked at El Pinto restaurant earing $3,610.08, in the second quarter he earned $5,683.04, in the third quarter he earned $3,618.55. In total in the year of 2020, ROMERO earned approximately $12,946.17 of reported income. In 2021, 2022, and in 2023 year to date, the records I reviewed indicated that ROMERO did not have any reported income. NMDWS records indicate that "Conture_Customs" does not have any reported employees or payroll. Based on this information and the above-described surveillance which observed ROMERO participating in drug transactions, I submit that ROMERO is a drug trafficker and the primary source of ROMERO's income is the sale of illegal narcotics. I further submit that any legitimate income earned by ROMERO would have been insufficient to fund the purchase or lease of the SUBJECT PROPERTY, which has a value of between $75,000 to $100,000.

34. Furthermore, I reviewed MVD records regarding the ownership of the SUBJECT PROPERTY. The records listed an individual owner as well as the financial institution Suntrust Bank.[2] I contacted the individual listed as the registered owner of the SUBJECT PROPERTY and

---

[2] Suntrust Bank became Truist Bank as the result of a merger in 2019.

this person told me he or she sold the vehicle in 2021 to an individual identified as Nick Maurer, who was acting as a representative of a company identified as Maurer Inc., which is located at 1945 16th Street, Corpus Christi, Texas. The individual registered owner further stated that Nick Maurer told him or her that Nick Maurer was brokering a transaction for an individual who resided in Las Vegas, Nevada. Maurer paid the registered owner approximately $30,000 in United States Currency and paid off the remaining loan amount to Suntrust bank/Truist Bank. After speaking with the individual listed as the registered owner of the SUBJECT PROPERTY, I made several attempts to contact Maurer on his cell phone and the Maurer Inc. business phone. I also left several voicemails, but I did not receive a response from the business or Maurer. I then sent an administrative subpoena to Truist Bank, formally known as Suntrust Bank, asking for lien information on the vehicle. Truist responded to my subpoena and stated that this account has been closed and there is no other account associated to the SUBJECT PROPERTY. It is my belief that Maurer did in fact broker a deal between the previous owner and ROMERO and that Maurer and/or ROMERO elected to keep the registration of the SUBJECT PROPERTY in the prior owner's name in order to disguise or conceal the nature, source, location, ownership, and control of proceeds of drug trafficking (i.e., the funds used to purchase the vehicle). In my training and experience it is common for drug traffickers to seek to hold property in the names of other individuals ("nominees") in order to insulate that property from seizure and forfeiture and to avoid suspicion when owning expensive assets despite having little or no legal income. Based on the investigation, I  the funds to purchase the SUBJECT PROPERTY arranged the transaction in such a way as to avoid associating ROMERO's name with the purchase and ownership of the SUBJECT PROPERTY.

35.     Based on my training and experience I believe that efforts to restrain or enjoin the use of the SUBJECT PROPERTY pursuant to 21 U.S.C. § 853(e) would be insufficient to maintain the property for forfeiture. An automobile is inherently mobile and may be titled in another person's name or transported outside of the United States in order to avoid seizure and forfeiture. Furthermore, the SUBJECT Property constitutes evidence of violations of Title 21 United States Code 841 and 846 and Title 18 United States Code § 1956(a)(1)(B)(i) and should be maintained in the custody of United States to facilitate its evidentiary use, as well as its forfeiture.

36.     The investigation into ROMERO and the Get Hard Crew gang and its members remains ongoing. Based on the above facts and circumstances, there is probable cause to believe that the SUBJECT PROPERTY was purchased by ROMERO utilizing income derived from illegal drug trafficking in violation of Title 21 United States Code sections 841 and 846. There is also probable cause to believe that ROMERO knowingly engaged in a financial transaction involving proceeds of specified unlawful activity in order to conceal the nature, source, location, ownership, or control of those proceeds in violation of Title 18 United States Code § 1956(a)(1)(B)(i). I further submit that there is probable cause to believe that the SUBJECT PROPERTY is subject to seizure and forfeiture to the United States Government pursuant to Rule 41 of the Federal Rules of Criminal Procedure, Title 18 United States Code sections 981 and 982, and Title 21 United States Code sections 853 and 881(a)(6).

I swear that this information is true and correct to the best of my knowledge.

_____
Emmett Fritz, DEA Special Agent
U.S. Drug Enforcement Administration
Albuquerque District Office

Electronically submitted to me and telephonically sworn this __7th__ day of December ___, 2023

_____
THE HONORABLE LAURA FASHING
UNITED STATES MAGISTRATE JUDGE
DISTRICT OF NEW MEXICO